Chief Justice Bibb
delivered the Opinion of the Court.
At June term, 1825, the plaintiff moved the court to correct the taxation of costs, made by the clerk in the allowances for attendance of witnesses in behalf of his adversary.
The objections to the allowances made by the clerk for witnesses, are divided into three classes: those entered in the clerk’s book by his deputies, Hawkins, Morgan, Bradford and Thomas; secondly, those entered by the clerk himself; thirdly, the allowances for the witness Crawford.
As to the first class, it is objected, that the taking of the witnesses claims by those deputies, was irre-guiar, and ought to be expunged, because a deputy clerk has no authority to take the claims of witnesses for their attendance, unless specially designated by the court for that purpose, and those deputies had not been so specially designated by the court.
And as to first air'd second classes, it is objected that the claims of those witnesses were allowed, without requiring the witnesses to swear to the verity of their claims.
As to the fact whether the witnesses were or were not sworn, the evidence of the clerks, leaves the matter in doubt; they cannot say whether they were or were not sworn; for those claims were entered in the book of allowances, at June and September terms, 1821, and at March, June and September terms, 1822; and the .clerks had no recollection as to the fact; but stated it was not then the practice to swear witnesses, who claimed for attendance, where the clerk knew they were subpcenied and attended as claimed, unless they claimed for travelling from another county; the clerks all swore they believed the witnesses had been subpcenied, anti had attended; but that .the practice of the of? *272 fice now was to swear the witnesses in all cases, to their claims; that this change had been made in consequence of a suggestion from the court at the last term, or the term before, to-wit, in 1825.
Jailors’ claim for attending as a witness, ¡resisted.
St is the duty of the clerk, to tax and ascertain the amount of costs, for which judgment is rendered, subject to the revision of the court on the eomplaint of either party.
The third relates to the allowance and taxation of Crawford’s attendances as a witness, because he was jailor of the county, and in that capacity was bound to attend the court.
' The court certify that Crawford was jailor, and in that capacity, by himself or by his deputy, usually attended the court, but that he had a deputy who frequently attended.
This was the whole evidence; no suggestion being made, that in fact the witnesses had not been summoned, nor that they had not, in truth, attended, as allowed by the clerk in his taxation of costs.
The court, upon hearing the evidence, refused to alter the taxation of costs, and the plaintiff has brought up the questions to this court for revision.
From time immemorial, the taxation of costs has been confided to the ministerial officer of the court, the clerk or keeper of the records, who records the judgment and issues the execution. The court renders judgment for costs, but the amount of the costs does not appear in the face of the judgment; it is taxed by the officer of the court, and put into the execution, or noted al the foot of the record where a complete transcript is made. It would greatly retard the more important business of the court, to the delay of justice, and increase of expense, if the courts in every instance were to be consulted in making up the taxation of costs- The taxation and allowance of costs made by the clerk .stands of course, unless an application is made to the court to correct an improper and unjust taxation. Public utility and true economy are best consulted by this practice. It would be unpardonable waste, if the courts were to stop the progress of the trial dockets, to hear witnesses claim attendance, and see the clerk tax the costs according to an order of continuance or judgment for costs. The supervising care and control of the court, to correct an excessive taxá- *273 ¿ion and reduce it to the just standard of right, or to increase a diminished taxation, is all that justice requires.
In deciding on a rpotion to correct the taxation of costs, the quest! on is not how the clerk arrived at the result, as by hiraselg or deputy,or by swearing the witness, or not, but whether the conclusion be, correct.
Statute concerning the compensar tion of witnesses and allowance of their claims.
Whenever the court is applied to to reduce a taxation made and allowed by the clerk, the question seems to be, whether the taxation is just or unjust, and not whether the clerk has arrived at a just conclusion for wrong reasons. If the clerk has arrived at a just conclusion as to the amount of costs, it would be strange if the court should reverse the just result, because the clerk had arrived at it by a compendious process. This court has again and again refused to reverse a right judgment of the circuit court because that court gave wrong reasons for the judgment. So in reviewing the taxation of costs by the clerk, the question would seem to be, is the taxation more or less than it should be? Not whether the clerk has or not, come at the proper amount by a saving of labor in the computation.
In the present case it was not pretended before the court below, that the witnesses were not in attendance under a subpoena, nor that too mu ch has been taxed for their attendance, or travelling. But it is said the clerk has committed a slip in allowing these claims, and taxing them in the bill of costs, in not swearing the witnesses himself, or in doing it by deputy, or in not swearing them at all, to the justice of their claims. This objection is predicated upon the statute in such cases provided, (1 Digest 586.)
The statute fixes the rate of daily attendance of witnesses, and the rate of allowance for travelling to and from the court where witnesses are summoned out of another county, and also allows ferriages.
It declares the clerk’s certificates for all allowances to witnesses shall have the same force as officers’ fee bills, that is, the force of judgments. '
The statute then enacts: “Every witness so summoned and attending any court, shall be paid by the party at whoso suit the summons issued, two pence per mile for travelling to the places of attendance, and the same for returning, besides ferriages; which *274 allowance shall be entered by the clerlt, of course, except where disputes arise concerning the same, and then such disputes shall be determined by the court. Witnesses in all cases, as well civil as criminal, shall be sworn as to their travelling, ferriages, and attendance; for which purpose, the clerk or some of his assistants, specially empowered by the court, or the commissioners, referrees or surveyor, as the case may be, shall administer the oaths.”
Clerks had the power by custom,before the statute, to allow the claims of witnesses and tax the costs, and the court the power to reverse their acts — Clause in the statute that the witnesses shall he sworn, is butdirectory, and the omission cannot effect the taxation.
It is clear from this statute, that the taxation of costs of witnesses, is confided to the clerk. The immemorial usage upon that subject is not abrogated but confirmed. The allowance by the clerk has the force of a judgment, subject however, (not by any express piovision of this statute, but by the power and usage of courts,) to the supervising control of the court over the acts of its officer. It is argued that the clerk has no power to make the allowance unless the witnesses are first sworn. We think otherwise. The power and authority of the clerk to make the allowance for witnesses, and to tax such allowance in the bill of costs against the adverse party, who is ordered to pay costs, is complete by immemorial usage, recognized and sanctioned by the statute, instead of being repealed or abrogated. The statute is but directory to the clerk. His power does not depend upon the witnesses taking the oath, it commences before hand. He has power to hear and state the claim, and to swear the witnesses to the claim. He holds the subpoena and knows the progress of the cause; he can and ought to correct the claim made by the witness, where, from his own knowledge, the witness claims too much, even should the witness swear to it. However, prudent it may be for the clerk in all cases to swear the witnesses to their claims; yet this courtis not prepared to say that an allowance made by the clerk, upon his own knowledge of the truth and justice of the claim made by the witness, shall be expunged from the bill of costs, merely because the clerk neglected to administer the oath; when upon reviewing the taxation allowed by the clerk, the truth of the claim is not contested. If the clerk allows the witness too much, although upon the *275 oath of the witness, the court, upon reviewing the taxation, and being satisfied that the witness did not attend the number of days, or did not travel the distance, as claimed, ought to correct the taxation of such excess of costs against the adverse party. It is the truth and justice of the claim, and not the mere oath of the witness before the clerk, that is to he regarded by the court, when called to review and correct the taxation. But in this case it stands indifferent from the evidence, whether in fact the witnesses did, or did not swear to their claims; if they did not, it was only in cases where the witnesses claimed no allowance for travelling or ferria-ges, and because the clerks knew of themselves the truth of the claims asserted by the witnesses.
Deputy clerk may allow the claims of witnesses and tax the costs.
Cleik cannot r<0s.^°* $ ehiJ deputy,
To obviate this defect of proof, it is argued, that as to those parts of the costs taxed Upon the claims of witnesses before the deputies, they should have been expunged from the taxation, because they were not specially empowered by the court to administer the oaths. But tríese persons were regularly admit-ed, and sworn deputies of the principal clerk. As such they had all the powers and authorities belonging to the office of clerk. The clerk has by law, a power to make a deputy; he has so made his deputy; and the deputy was regularly admitted and sworn according to law.
It cannot be maintained as a legal principle, that the’ deputy, lawfully constituted as such, has less power than the principal. This point came before the court, and was decided by all the judges of King’s bench, in the case of Parker vs. Kett, (1 Lord Ray. 658; Salk. 95; 12 Mod. 466.) The case is, Keck was steward of the manor, with power to exorcise the said office by himself or sufficient deputy; Keck appointed Osman Clerke his deputy, and as such he executed the said office many years; Clerke appointed Ballaston, under his hand and seal, to be his deputy to take a surrender of a copyhold out of court. Ballaston did accordingly take the surrender out of court, and at the next court this surrender was presented before Osman Clerke, and Elizabeth Kett was accordingly admitted by Osman Clerke in place of the former copyholder, upon the *276 surrender so tali.cn by Ballaston. The first question made thereupon, was whether Ballaston had a good original autiiority to take this surrender. And Holt, Chief Justice, declared the opinion of all the judges, that this surrender was good. As to the ’first point they held, “that Ballaston deriving his authority from a writing under the hand and seal of the deputy steward, had a good original authority. For where an officer has power to make a deputy, such deputy, when he is created such, may do any act that his principal might do; Jess powers he cannot have.'”
Deputy sheriff cannot be restricted in his power,but when constituted, has all the powers of the principal,
Üiffetence between an assistant and ' á deputy. '
And the Chief Justice cited the cáse of Morton vs. Sims, (Hob. 12,) in case of an under sheriff, which case he said went farther; “because there the covenant that the under sheriff should not execute snv execution for more than £20, without the special warrant of the high sheriff, was held void, because it was repugnant to the nature of the deputation.” The rule as laid down by the court, that a deputy, when he is created such; may do any act which his principal might do; that a restriction of tffe power of the deputy is void as contrary to the nature of the deputation, has strong foundation in public utility; for otherwise, the people might be greatly deceived and imposed upon, by confiding in one who was ostensibly a public officer, when in fact, by the terms of the contract between the principal and the deputy, the latter would be converted into a private agent. A distinction between the powers of a public officer, and those of his constituted deputy, would be so highly inconvenient in practice, that it ought not to be drawn unless the statute imperiously commanded.
The statute before quoted does not so require. A deputy is a clerk with all the powers of the principal. . An assistant does not mean a deputy. Clerks and other public officers have assistants who are not deputies. Where the clerk desires to confide the business of administering oaths to witnesses, to one of his assistants who is not a deputy, the court may specially empower such assistant; but a deputy by the very act and authority which constitutes *277 rm fiim such, has power to do any act which his pri oipal may do.
Jailer is entitled to compensation for his attend- ■ anoe on court as a witness.
He is not bound to attend court, as jailer in person, but may attend by deputy.
Judgment of the court.
As to the taxation of the witness, Crawford’s attendance, it is argued that this should have been fexpunged, because he was jailor and bound to attend upon the court; and it is likened to the case of. a witness summoned in two or more suit's, and attending in each at the same time, yet cannot charge his attendance in more than one suit at the same time. But the parrallel between the case of a witness summoned in several suits at the same time, and that of a jailor summoned as a witness, does not hold good. The statute, prohibits the witness from charging his attendance in more than one suit for the same time, but gives him his election to which of the summoning parties he will charge his attendance. But the statute does not prohibit a jailor, when summoned as a witness, from charging his attendance. A witness when summoned, is bound to constant attendance on the court until discharged, he cannot give his attention by deputy.
The jailor, by yirtue of his office is not bound to .constant attendance, “he shall attend on the circuit court held in his county, when required, and execute the commands of the court;” he may, when required to attend as an officer, attend by his deputy and by his deputy execute the commands of the court. But when he is summoned as a witness, he cannot attend by deputy, but must attend in person and like any other witness,
it seems to this court, that a jailor when summoned as a witness and attending as such, lias a right to charge his attendance to the person summoning him; and that such charge is proper to be taxed in the bill of costs against the adverse party, if adjudged to pay costs; that a deputy clerk has all the powers of his principal in swearing witnesses to their claims for attendance, and in allowing such claims; that upon an application to the court to reyiew and correct the taxation of costs made by the clerk, because of an objection to the allowance made for costs of •witnesses, the court ought to look into the substance of the taxation, and the truth of the charges, wheth - *278 er the witnesses did in fact attend, upon subpoena/ and for the number of days, and were entitled for travelling and ferriages, to the amount claimed by them and allowed by the clerk in the taxation of hosts; and to the proportion of witnesses to the number of facts; hot that the court ought not to direct their discretion and judgment by catches and cavils at the course pursued by the clerk in arriving at a correct result; it is enough that the taxation be right and just; it is the conclusion of the clerk which is the subject of revision and not his modus operandi.
Judge Mills’ dissent.
It is, therefore, considered by the court that the judgment of the circuit court be affirmed with costs.